**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF ALABAMA**
**EASTERN DIVISION**

RECEIVED
2007 DEC 20 P 1:58
DEBRA P. HACKETT, CLK
U.S. DISTRICT COURT
MIDDLE DISTRICT ALA

JERRY PARKER;

Plaintiff,

v.

MUTUAL OF OMAHA INSURANCE COMPANY;
UNIVAL, INC.;
UNITED OF OMAHA LIFE INSURANCE CO.;
ALABAMA NATIONAL BANCORPORATION;
ALABAMA NATIONAL BANCORPORATION GROUP INSURANCE PLAN,

Defendants.

Civil Action No.: 3:07CV1107-WKW

**COMPLAINT**

COMES NOW Plaintiff, Jerry Parker, by and through his attorneys of record[1], and file the following claims against Defendants Mutual of Omaha Insurance Company, Unival, Inc., United of Omaha Life Insurance Co., Alabama National Bancorporation, and Alabama National Bancorporation Group Insurance Plan.

## I. INTRODUCTION

1. This is an action for legal and equitable relief seeking redress of violations of the Employee Retirement Income Security Act (hereinafter referred to as "ERISA"). This suit is brought pursuant to 29 U.S.C. § 1132(a), in order to secure benefits due to the Plaintiff through an Employee Welfare Benefit Plan and/or an Employee Pension Plan, under the terms of which the Plaintiff is a defined beneficiary participant, or otherwise qualified for benefits, and to

[1] This document has been drafted by counsel for the Plaintiff on Plaintiff's behalf based on facts presented by Plaintiff but does not support the inference that Plaintiff has legal training or skills necessary to understand the legal terminology and/or concepts used herein.

further enjoin those acts or practices which violate the Defendant's fiduciary duties owed to the Plaintiff as set forth within 29 U.S.C. § 1104. Plaintiff seeks any and all benefits to which he may be entitled should this Court determine he is "disabled", to include long term and short term disability benefits; pension benefits; waiver of premium benefits under disability, life, accidental death and dismemberment or accident policies; and any other available benefits.

**II. JURISDICTION**

2. Jurisdiction is appropriate under 28 U.S.C. § 1331 in that 29 U.S.C. §1132 (e) confers Jurisdiction upon the District Courts of the United States where, as here, Plaintiff's claims relate to an "employee welfare benefit plan" and/or "employee pension plan" as those terms are defined within 29 U. S. C. § 1001, et. seq. Jurisdiction is further appropriate under 28 U.S.C. § 1332(a) in that the matter in controversy exceeds the sum of $75,000, exclusive of interest and costs, and diversity exists between the parties.

**III. VENUE**

3. Venue is appropriate in that a substantial part of the events or omissions giving rise to the Plaintiff's claims occurred within this District. Therefore, venue is proper within the Middle District of Alabama pursuant to 29 U.S.C. § 1132(e)(2) given that "the breach took place" within the Middle District of Alabama.

4. Furthermore, venue is appropriate under 28 U.S.C. § 1391(b)(2) in that the Defendants were doing business in the State of Alabama, and upon information and belief, a substantial part of the events giving rise to the Plaintiff's claims occured within this District.

**IV. PARTIES**

5. Plaintiff, Jerry Parker, is a resident citizen of Lee County, Alabama.

6. Defendant Mutual of Omaha Insurance Company is, upon information and belief,

a Nebraska corporation with its principal place of business in Nebraska.

7. Upon information and belief, Defendant Mutual of Omaha Insurance Company may be served with process by serving The Prentice Hall Corporation Systems Inc.; 150 South Perry Street; Montgomery, AL 36104.

8. Defendant United of Omaha Life Insurance Company is, upon information and belief, a Nebraska corporation with its principal place of business in Nebraska.

9. Upon information and belief, the Defendant United of Omaha Life Insurance Company is a plan "fiduciary" in the employee welfare benefit plan and/or pension plan and is an insurance company authorized to transact the business of insurance in the State of Alabama.

10. Upon information and belief, Defendant United of Omaha Life Insurance Company further served as underwriter for the employee welfare benefit plan and/or pension plan and may be served with process by serving The Prentice Hall Corporation Systems Inc.; 150 South Perry Street; Montgomery, AL 36104.

11. Defendant Unival Corporation is, upon information and belief, a Delaware corporation whose principal place of business is in Pennsylvania.

12. Upon information and belief, the Defendant Unival Corporation is a plan "fiduciary" under the employee welfare benefit plan but is not licensed to do business in the State of Alabama.

13. Furthermore, the Defendant Unival Corporation provides services to the plan(s) at issue, and as such is a "party in interest" as that term is defined by 29 U.S.C. § 1002(14) but it is not licensed to do business in the State of Alabama.

14. Upon information and belief Defendant Unival Corporation may be served with process by serving 2100 Commonwealth Blvd., Suite 300, Ann Arbor, MI 48105.

15. The Defendant Alabama National BanCorporation Group Insurance Plan, E.I.N. 63-1114426; P.N. 501; is an "employee welfare benefit plan" and/or "employee pension plan" as defined within 29 U.S.C. § 1001, et. seq., and may be served with process by serving ANB Insurance Company; Richard Pardue, President; 1927 First Avenue North; Birmingham, AL 35203.

16. The Defendant Alabama National BanCorporation is, upon information and belief, the named "Plan Administrator" for the Defendant Group Insurance Plan and, according to the Plan, may be served with process by serving ANB Insurance Company; Richard Pardue, President; 1927 First Avenue North; Birmingham, AL 35203.

## V. STATEMENT OF FACTS

17. In or around 2000, Plaintiff underwent a heart catheterization, which indicated 80% blockage. Plaintiff therefore underwent angioplasty in which a stent was inserted.

18. Approximately six months later, another artery was identified as being 75% clogged. Plaintiff therefore underwent angioplasty.

19. As a result of Plaintiff's severe heart condition and resulting, necessary surgeries as described above, Plaintiff was hospitalized for four out of six months in 2000.

20. On February 17, 2004 Plaintiff was again hospitalized and again underwent heart surgery in which a left heart catheterization, coronary angiography and percutaneous transluminal coronary angioplasty and stent of the left anterior descending with percutaneous transluminal coronary angioplasty was performed. Plaintiff underwent cardiac arrest during this surgery.

21. On March 2, 2004, Plaintiff was hospitalized yet again for a left heart cardiac catheterization, which identified a 90% blockage, coronary angiography and left

ventriculography.

22. Plaintiff's History and Physical Report dated March 2, 2004 and completed by Dr. Michael Williams notes that Plaintiff has "aggressive atherosclerotic vascular disease with increasing chest pain pattern."

23. Plaintiff was unable to return to his occupation as a Senior Vice President at a bank due to his numerous disabilities after the March 2, 2004 heart surgery.

24. Plaintiff's occupation involved a high level of stress and his required job duties included, but were not limited to, the following: prepare monthly and quarterly action plans that document all action on each criticized or classified asset over $100M; actively collect past due loans on a daily basis as warranted; interact with Corporate Council; recommend actions to Senior Management that limits the Bank's exposure to loss or litigation; actively review criticized and classified loan portfolio for risk rating upgrades; originate at least $300 thousand in commercial loans monthly; assist in growing deposits at his branch by 15% annually; perform two senior manager calls per week; perform twenty pre-planned, in-person calls per month; hold weekly meetings with the manager; identify and present at least one group banking presentation quarterly; refer at least ten products to other lines of business monthly; and meet and/or maintain numerous credit quality goals related to his loan portfolio.

25. Plaintiff's occupation also required the following skills: analytical ability to synthesize complex information; mathematical skills; computer skills; customer service skills; interpersonal skills; oral communication skills; written communication skills; and supervisory skills.

26. Plaintiff filed a claim for short term disability ("STD") benefits on March 9, 2004, listing his last day of work as March 1, 2004. Plaintiff's STD claim number is 250400235601.

27. Dr. Kevin Jackson, Plaintiff's primary physician, submitted an Attending Physician's Statement ("APS") with Plaintiff's claim for STD benefits. Dr. Jackson listed Plaintiff's surgeries as angioplasty 7/2000; stents 8/2000, heart catheterization 8/2000, heart catheterization 3/13/01 followed by angioplasty; 2/17/04 heart catheterization.

28. Dr. Jackson also noted that Plaintiff was "permanently disabled" and "not expected to return" to work.

29. The Social Security Administration ("SSA") found that Plaintiff became disabled on March 2, 2004 and that his monthly benefits would begin November 2004.

30. Defendants paid Plaintiff short term benefits from March 2, 2004 through September 7, 2004.

31. Defendants notified Plaintiff by letter dated August 2, 2004 that they had completed review of his STD benefits and concluded that "the records d[id] not support [Plaintiff's] disability beyond April 30, 2004."

32. Plaintiff appealed Defendants' denial of his STD benefits past April 30, 2004.

33. Defendants thereafter paid Plaintiff STD benefits until September 7, 2004.

34. Defendant submitted a long-term disability ("LTD") claim on his LTD Policy number GLTD-82Y8 in or around October 1, 2004.

35. Defendant's October 1, 2004 LTD Form listed Dr. Kevin Jackson (Plaintiff's primary physician) and Dr. Michael Williams as his current treating physicians.

36. In or around October 2004, Dr. Jackson sent Defendants a letter in which he noted that he had treated Plaintiff for numerous disabilities, including "hypertension, hypercholesterolemia, coronary artery disease, esophageal reflux, hypothyroidism, and depression." Dr. Jackson further stated that Plaintiff "is prevented from performing the material

duties of his regular job on a part time or full time basis ... [and] is totally disabled."

37. Defendants notified Plaintiff by letter dated October 25, 2004 that they had not yet received his portion of the application for his LTD claim. The letter, however, listed his LTD Policy number as GLTD 82Y8 and included an LTD claim number of 250400797901.

38. Defendants sent Plaintiff a letter dated December 3, 2004 that they were reviewing his application for long-term disability ("LTD") benefits.

39. Defendants interviewed Plaintiff regarding his disability on December 13, 2004. Defendants' internal notes reflect that during this interview, Plaintiff "stated that he went into cardiac arrest on March first [2004] and almost died." Plaintiff further "report[ed] that he really has it in his own mind that ***he hasn't been the same since***."

40. Defendants' internal notes dated December 13, 2004 also note that Plaintiff's current medications included: Crestor[2] 10 mg daily; Levothroid[3] 75 mg daily; Zebeta[4] 5 mg daily; Plavix[5] 75 mg daily; Protonix[6] 40 mg per day; and Flonase[7] daily.

41. Plaintiff submitted an Attending Physician statement by Dr. Jackson dated February 17, 2004 in support of his Supplementary Report of Disability. In his AP statement, Dr. Jackson listed Plaintiff's Primary Diagnosis as coronary artery disease (414.01). Dr. Jackson also listed HTN, hypercholesterolemia, heart stents and angioplasty as objective

---

[2] Crestor is used for lowering cholesterol and triglycerides. Side effects of Crestor include dizziness.

[3] Levothyroid is used for treating low thyroid activity and treating or suppressing different types of goiters. Side effects of Levothyroid include anxiety, mood swings, sleeplessness and tiredness.

[4] Zebeta is used for treating high blood pressure. Side effects of Zebeta include drowsiness, dizziness, lightheadedness, fatigue, sleeplessness and unusual tiredness.

[5] Plavix is a platelet aggregation inhibitor used to reduce the risk of stroke and heart attack in individuals who have already had a heart attack or stroke. Side effects of Plavix include dizziness.

[6] Protonix is used to treat gastroesophageal reflux disease ("GERD"). Side effects of Protonix include drowsiness and dizziness.

[7] Flonase reduces inflammatory reactions in the nasal airway in response to allergens and irritants in the air. Side effects of Flonase include dizziness and tiredness.

findings. Dr. Jackson listed 272.0 (pure hypercholesterolemia) and 786.50 (chest pain) as secondary conditions contributing to Plaintiff's disability.

42. Dr. Jackson also included, in his AP statement, "I doubt that he will recover to any significant degree." Dr. Jackson noted, ***merely as a restriction and not as a primary or secondary condition***, that "psychological impairment is significant."

43. Defendants notified Plaintiff by letter dated January 6, 2005 that they needed more information, specifically medical records from Dr. Jackson, to make a determination as to his eligibility for benefits.

44. Defendants' internal documents reveal that also on January 6, 2005, Defendants made the determination that Plaintiff's "[p]rimary cause of disability appears to be psychiatric[.]"

45. Defendants' internal documents dated January 8, 2005, reveal that Plaintiff "***began disability with cardiac problems*** and benefits were allowed to 4/30/04." Defendants further include the note that "[i]t appears that his mental health problems are now primary."

46. Defendants internal documents dated January 11, 2005 state "the insured initial disability was related to his cardiac problem ... the primary disabling conditions now is depression and anxiety."

47. Defendants notified Plaintiff by letter dated June 30, 2005 that they had approved his application for LTD benefits.

48. The June 30, 2005 letter provided that "Disability and Disabled mean that because of an Injury or Sickness, a significant change in Your mental or physical functional capacity has occurred in which You are: (a) prevented from performing at least one of the Material Duties of Your Regular Occupation on a part-time or full-time basis; and (b) unable to generate Current

Earnings which exceed 80% of Your Basic Monthly Earnings due to that same Injury or Sickness."

49. The June 30, 2005 letter did not specify what disability they found had rendered him disabled and qualified him for disability benefits but did provide that "[b]enefits for your condition are potentially payable for a maximum of 2 years, or until September 7, 2006."

50. On or around September 10, 2005, Plaintiff completed and submitted to Defendants a Supplementary Report of Disability in which he acknowledged that he had recently been prescribed Cymbalta and Clonazepam, and that "dizziness does sometimes occur with both drugs."

51. During December 2001, Plaintiff underwent a formal Overnight Polysomnography where he was diagnosed with restless leg syndrome (RLS), PLM disorder (780.52-4), which was further diagnosed during another formal Overnight Polysomnograph in 2005. Both sleep study reports from the Sleep Disorders Laboratory at East Alabama Medical Center also noted Plaintiff's "sleep architecture was markedly abnormal, showing a decrement to the total amount of REM sleep and a complete absence of the deeper stages of sleep (stages 3-4)." Plaintiff experienced a total of 420 'Nocturnal Myoclonic' events during the two-night study in 2005.

52. On September 28, 2005, Dr. Sharma, Plaintiff's sleep specialist noted the following problem list regarding to Plaintiff: Obstructive Sleep Apnea; Hypersomnolence; Coronary Artery Disease; and Hypothyroidism.

53. In January of 2006, Plaintiff was on the following prescription medications for his

numerous disabilities: Cymbalta[8] 60 mg once daily; Levothyroxine[9] 75 mcg once daily; Crestor[10] 10 mg once daily; Zebeta[11] 5 mg once daily; Clonazepam[12] 5 mg once daily; Lorazepam[13] 1 mg twice daily; Protonix[14] 40 mg once daily; and Flonase[15] .05% twice daily.

54. Defendants notified Plaintiff by letter dated March 18, 2006 that because SSA awarded Plaintiff benefits, Defendants alleged that they had overpaid him benefits for the period of November 1, 2004 through March 7, 2006 and therefore demanded a refund in the amount of $30,488.18.

55. In or around April of 2006, Plaintiff sent $30,488.18 to Defendants for this alleged "overpayment of benefits."

56. Defendants notified Plaintiff by letter dated November 3, 2006 that the additional records supplied by Dr. Williams and the Orthopedic Clinic allegedly "do not support [Plaintiff] as being functionally disabled from [his] own job."

57. Plaintiff's current medications as of January 2007 were as follows: Cymbalta, 60 mg daily; Levothyroxine, 75 mcg daily; Ativan[16], 1 mg twice daily; Crestor, 10 mg daily;

---

[8] Cymbalta is used for treating depression, generalized anxiety disorder, and is characterized as a 'central pain inhibitory'. Side effects of Cymbalta include drowsiness, dizziness, blurred vision and lightheadedness.

[9] Levothyroxine is used for treating low thyroid activity and treating or suppressing different types of goiters. Side effects of Levothyroxine include anxiety, mood swings, sleeplessness and tiredness.

[10] Crestor is used for lowering cholesterol and triglycerides. Side effects of Crestor include dizziness.

[11] Zebeta is used for treating high blood pressure. Side effects of Zebeta include drowsiness, dizziness, lightheadedness, fatigue, sleeplessness and unusual tiredness.

[12] Clonazepam is used for treating panic disorders and other conditions as determined by a doctor. Side effects of Clonazepam include drowsiness, dizziness, lightheadedness, unusual weakness and difficulty with coordination.

[13] Lorazepam is used for treating anxiety. Side effects of Lorazepam include drowsiness, dizziness, clumsiness, lightheadedness and weakness.

[14] Protonix is used to treat gastroesophageal reflux disease ("GERD"). Side effects of Protonix include drowsiness and dizziness.

[15] Flonase reduces inflammatory reactions in the nasal airway in response to allergens and irritants in the air. Side effects of Flonase include dizziness and tiredness.

[16] Plaintiff is prescribed Ativan for his sleep disorders. Ativan is a benzodiazepine that slows chemicals in the brain. Side effects of Ativan include clumsiness, dizziness, drowsiness, headache, lightheadedness, unsteadiness and weakness.

Fosinopril[17] NA, 20 mg daily; Metoprolol Succinate[18], 50 mg daily; Protonix, 40 mg daily; Ranitidine HCL[19], 150 mg twice daily; Ferrous Sulfate, 325 mg daily; Flonase, .05% twice daily; Arthrotec[20], 75 mg twice daily; Skelaxin[21], 800 mg every 6 hours or as needed; Tramadol[22], 50 mg every 4 hours or as needed; Claritin, 10 mg daily; Aspirin, 81 mg daily; Nitroglycerin, 0.4 mg as needed.

58. Plaintiff was evaluated by Guendalina Ravello, Ph.D., MPH on July 5, 2007; August 16, 2007 and August 28, 2007. The result of these evaluations was a "Comprehensive Psychological Evaluation" completed by Dr. Ravello.

59. In the "Comprehensive Psychological Evaluation," Dr. Ravello noted Plaintiff's "remarkable medical history of ongoing sleep apnea, severe coronary artery disease with associated surgical procedures, Hypercholesterolemia, Hypertension, Ischemic Disease, Gastroesopageal Reflux, Hypothyroidism, Osteoarthritis, Fibromyalgia, RLS and chronic pain[,]" as well his February 2004 episode of hypoxia.

60. Dr. Ravello concluded that Plaintiff's "current symptoms of depression and anxiety appear to be more associated with his deteriorating medical condition, chronic pain and ongoing adjustment to cope and function under his current physical and cognitive limitations."

61. Dr. Ravello further found that Plaintiff had a "pre-morbid level of intellectual

[17] Fosinopril is an ACE inhibitor used to treat high blood pressure. Common side effects of Fosinopril include dizziness, lightheadedness, fatigue, headache, irregular heartbeat and muscle pain.
[18] Metoprolol Succinate is used for treating high blood pressure, long-term treatment of chest pain and reducing the risk of death because of heart problems. Common side effects of Metropolol Succinate include depression, drowsiness and sleeplessness.
[19] Ranitidine is the generic name for the brand name drug known as Zantac.
[20] Arthrotec is used for treating the symptoms of arthritis. Common side effects of Arthrotec are drowsiness and dizziness.
[21] Skelaxin is a muscle relaxant used for treating acute painful muscle conditions. Common side effects of Skelaxin are dizziness, drowsiness, irritability and nervousness.
[22] Tramadol is the generic name for the brand name drug known as Ultram. Tramadol/Ultram is an analgesic used to treat moderate to moderately severe pain. Common side effects of Tramadol/Ultram are dizziness and drowsiness.

functioning and Achievement approximately in the High Average to the Average ranges [but that] [t]est results are indicating that Mr. Parker's current intellectual abilities are falling in the Average to Low Average ranges."

62. Dr. Ravello noted Plaintiff's "specific marked deficiencies" are in the "areas of attention, concentration and immediate memory for verbal and non-verbal tasks." Plaintiff "also displayed evidence of fluctuation in his attention and executive functioning."

63. Dr. Ravello noted in her Comprehensive Psychological Evaluation that such deficiencies are noted in individuals who suffer hypoxia or have other oxygen deprivation conditions, such as sleep apnea, or have vascular disease.

64. Dr. Ravello concluded that Plaintiff's "results are consistent with the presence of a cognitive disorder NOS, secondary to his medical condition."

65. By letter dated October 15, 2007, Defendants notified Plaintiff that they had completed their review of his appeal based on the denial of his LTD claim and that they were continuing to deny benefits because they "determined that Mr. Parker was not disabled from performing the material duties of any gainful occupation for which he was reasonably fitted[.]"

66. The October 15, 2007 letter also contained the following statement: "While [Plaintiff] might be disabled, his disability is the result of a mental and nervous disorder for which the maximum period of benefits has been paid."

67. Plaintiff's disabilities are ongoing. He will have knee replacement surgery on January 8, 2008 and has recently been diagnosed with severe carpal tunnel syndrome in his right and left hands. The nerve problems in his hands are connected to his neck and upper back spasms that were originally included in his initial disability claim. Plaintiff is also currently being treated for a hiatal hernia and Pharyngocele condition that was diagnosed in July 2007.

68. Plaintiff requested, via letter by undersigned counsel dated January 26, 2007, any and all "relevant" documents as is defined within 29 C.F.R. § 2560.503-1, including but not limited to any and all documents pertaining to or referencing Plaintiff's employee welfare benefit plan(s) and/or employee pension plans.

69. Defendant, Mutual of Omaha, produced some documents on February 7, 2007, including an incomplete copy of Plaintiff's LTD Policy.

70. Plaintiff's counsel continued to request copies of all "relevant" documents as is defined within 29 C.F.R. § 2560.503-1 via numerous letters to Defendants.

71. On or about June 11, 2007, Mutual of Omaha produced a copy of what was purported to be "the policy booklet" containing Plaintiff's STD, LTD, and Group Life and AD&D policies.

72. On or about October 15, 2007, Mutual of Omaha produced additional documents to Plaintiff, including medical records.

## VI. CAUSE OF ACTION
## COUNT I

### (A) ACTION FOR BENEFITS UNDER 29 U.S.C. § 1132(a)

73. Plaintiff adopts and incorporates all of the paragraphs above as though fully set forth herein.

74. The Plan is deemed "employee welfare benefit plan" and/or "employee pension plan" as those terms are defined in 29 U.S.C. § 1001, et. seq.

75. Plaintiff is a "participant" and a "beneficiary" in the employee welfare benefit and/or pension plan as those terms are defined under 29 U.S.C. § 1001, et. seq.

76. Plaintiff is disabled under the terms of the employee welfare benefit plan.

77. Plaintiff is disabled under the terms of the employee pension plan.

78. The decision to deny benefits was not supported by substantial evidence.

79. The Defendants denied Plaintiff benefits to which Plaintiff was entitled under the terms of the employee welfare benefit plan/insurance policy(ies) and/or pension plan by refusing to provide or discontinuing payment of benefits.

80. The decision making process did not comport with 29 U.S.C. § 1133's requirement that any notice of the denial must contain the specific reasons for such denial, written in a manner calculated to be understood by the participant, and must comport with the Department of Labor regulations.

81. The decision making process did not provide a reasonable opportunity to the Plaintiff for a full and fair review of the decision denying the claim, as is required by 29 U.S.C. § 1133 and 29 C.F.R. 2560.503-1.

82. The appellate procedures did not provide the Plaintiff a full and fair review.

83. The Defendant's actions were unreasonable and/or arbitrary and capricious and in violation of the terms of the employee welfare benefit plan/insurance policy.

84. As a direct and proximate result of the conduct of the Defendants in failing to provide benefits for the Plaintiff's disability and/or terminating benefits, and in failing to provide a full and fair review of the decision to deny benefits and/or terminate benefits, Plaintiff has been damaged in the amount equal to an amount of benefits to which Plaintiff would have been entitled under the Plan(s), in an amount equal to future benefits payable while the Plaintiff remains disabled under the terms of the Plan(s), and additional damages to be proven in the trial of this matter.

**COUNT II**

**CAUSE OF ACTION FOR FAILURE TO PROVIDE PLAN DOCUMENTS UNDER 29 U.S.C. § 1132(c)**

85. Plaintiff adopts and incorporates all of the Paragraphs above as though fully set forth herein.

86. The Defendant Plan Administrator and / or the *de facto* Plan Administrator was requested to provide all relevant documents as well as any documents which form the basis of the Defendants' denial of benefits to the Plaintiff.

87. 29 C.F.R. 2560.503-1 (h) (2) (iii) provides that the Plaintiff is to be provided copies of "all documents, records and other information relevant to claimant's claim for benefits."

88. 29 C.F.R. 2560.503-1 (m) (8) defines "relevant" as it is used in 29 C.F.R. 2560.503-1 (h) (2) (iii), as all documents, records or other information which was "relied upon in the making of the benefit determination" or "was submitted, considered, or generated in the course of making the benefit determination, without regard to whether such documents, record or other information was relied upon in making the benefit determination", and "demonstrates compliance with the administrative process and safeguards required."

89. The Defendant Plan Administrator and / or the *de facto* Plan Administrator, failed or refused to provide the documents as required pursuant to 29 U.S.C. § 1132 (c) and 29 C.F.R. 2560.503-1 (h) (2) (iii).

90. As an ERISA fiduciary the Defendant Plan Administrator and / or the *de facto* Plan Administrator was responsible for providing timely, accurate and complete information and documents to Plaintiff.

91. Pursuant to 29 U.S.C. § 1132(c), the Defendant Plan Administrator and / or the *de facto* Plan Administrator is liable to Plaintiff for penalties in an amount up to One Hundred Ten Dollars ($110) per day from thirty days after the first request for the claims file and supporting documentation.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests this court find jurisdiction and venue appropriate, and after trial, grant the Plaintiff the following relief:

a. Award the Plaintiff past benefits due and payable under the terms of the employee welfare benefit plan/insurance policy(ies) and/or pension plan pursuant to 29 U.S.C. § 1132(a);

b. For a declaratory judgment as to the Plaintiff's entitlement to future benefits and an appropriate order directing the Defendant to pay all similar claims of the Plaintiff in the future pursuant to 29 U.S.C. § 1132 (a);

c. Should the Defendants pay all past due benefits, Plaintiff requests this Honorable Court enter a declaratory judgment as to the Plaintiff's entitlement to future benefits, along with entering an appropriate order directing the Defendant to pay similar claims to the Plaintiff in the future, or in the alternative, for the Court to remove the Defendants from their fiduciary roles in the administration of the Plan(s), and to appoint a special master to substitute for those Defendant's, with the special master having the authority to make all determinations as to the Plaintiff's entitlement to future benefits;

d. For a judgment against the Defendants awarding the Plaintiff prejudgment interest, costs and expenses, including the reasonable attorney's fee as permitted under 29 U.S.C. § 1132 (g)(1);

e. For an order enjoining the Defendants from further breaches of fiduciary or co-fiduciary duties, and direct that Defendants exercise reasonable care, skill, prudence, and diligence in the administration of the Plaintiff's claim;

f. For an order finding the Defendants jointly and severally liable for the breaches described herein;

g. For an order requiring Defendants to provide the Plaintiff with any additional benefits to which the Plaintiff would be entitled pursuant to a finding that the Plaintiff is disabled under the Plan(s);

h. For a judgment against the Plan Administrator and or *de facto* Plan Administrator in an amount representing up to $110 per day from the date of its refusal to provide the claims file and supporting documentation until such time as the documents are provided to Plaintiff as required under 29 C.F.R. 2560.503-1(g)(1), and pursuant to 29 U.S.C. § 1132(c)(1);

i. Such other relief as may be deemed just and proper.

Thomas O. Sinclair
(SIN018)

Jenifer Champ Wallis
(WAL191)

**OF COUNSEL:**
Thomas O. Sinclair (SIN018)
Jenifer Champ Wallis (WAL191)
CAMPBELL, GIDIERE, LEE, SINCLAIR & WILLIAMS
2100-A SouthBridge Parkway, Suite 450
Birmingham, AL 35209
Phone: (205) 803-0051
Fax: (205) 803-0053
E-mail: tsinclair@cwp-law.com
E-mail: jwallis@cwp-law.com

**PLEASE SERVE DEFENDANTS BY CERTIFIED MAIL AS FOLLOWS:**

**Mutual of Omaha Insurance Company**
The Prentice Hall Corporation Systems, Inc.
150 South Perry Street
Montgomery, AL 36104

**United of Omaha Life Insurance Company**
The Prentice Hall Corporation Systems, Inc.
150 South Perry Street
Montgomery, AL 36104

**Unival Corporation**
2100 Commonwealth Blvd
Suite 300
Ann Arbor, MI 48105

**Alabama National BanCorporation Group Insurance Plan**
ANB Insurance Company
Richard Pardue, President
1927 First Avenue North
Birmingham, AL 35203

**Alabama National BanCorporation**
ANB Insurance Company
Richard Pardue, President
1927 First Avenue North
Birmingham, AL 35203

Of Counsel

DUPLICATE

Court Name: U S DISTRICT COURT - AL/M
Division: 2
Receipt Number: 4602002139
Cashier ID: brobinso
Transaction Date: 12/20/2007
Payer Name: CAMPBELL GIDIERE LEE SINCLAIR

---

CIVIL FILING FEE
For: CAMPBELL GIDIERE LEE SINCLAIR
Case/Party: D-ALM-3-07-CV-001107-001
Amount: $350.00

---

CHECK
Check/Money Order Num: 11721
Amt Tendered: $350.00

---

Total Due: $350.00
Total Tendered: $350.00
Change Amt: $0.00